UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| COSMOLEDO, LLC, *et al.*[1] | Case No. 20-12117 (MEW) |
| | Jointly Administered |
| Debtors. | |

### ORDER (a) APPROVING BID PROTECTIONS, (b) APPROVING BIDDING PROCEDURES FOR THE CONDUCT OF AN AUCTION, AND (c) FIXING MANNER AND NOTICE OF AUCTION, SALE HEARING AND CURE CLAIMS BAR DATE

Upon the *Motion of the Debtors for Orders (I) Scheduling Hearing to Consider (a) Sale of Substantially All of the Debtors' Assets, Free And Clear of All Liens, Claims and Encumbrances, Subject to Higher and Better Offers and (b) Assumption and Assignment of Leases and Executory Contracts; (II) Scheduling Hearing to Consider Approval of Stalking Horse Agreement, Related Bid Protections, and Bidding Procedures for the Conduct of an Auction; (III) Fixing a Cure Claims Bar Date with respect to the Assumption and Assignment of Leases and Executory Contracts; (IV) Fixing Manner and Notice of Sale Hearing; (V) Authorizing The Debtors to Sell Assets, Free and Clear of All Liens, Claims And Encumbrances, Subject to Higher and Better Offers; (VI) Authorizing Assumption and Assignment of Leases And Executory Contracts; and (VII) Granting Related Relief*, dated September 10, 2020 including all exhibits thereto (the

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Cosmoledo, LLC (6787); Breadroll, LLC, (3279); 688 Bronx Commissary, LLC (6515); 95 Broad Commissary, LLC (2335); 178 Bruckner Commissary, LLC (2581); 8 West Bakery, LLC (6421); NYC 1294 Third Ave Bakery, LLC (2001); 921 Broadway Bakery, LLC (2352); 1800 Broadway Bakery, LLC (8939); 1535 Third Avenue Bakery, LLC (1011); 2161 Broadway Bakery, LLC (2767); 210 Joralemon Bakery, LLC (4779); 1377 Sixth Avenue Bakery, LLC (9717); 400 Fifth Avenue Bakery, LLC (6378); 1400 Broadway Bakery, LLC (8529); 575 Lexington Avenue Bakery, LLC (9884); 685 Third Avenue Bakery, LLC (9613); 370 Lexington Avenue Bakery, LLC (0672); 787 Seventh Avenue Bakery, LLC (6846); 339 Seventh Avenue Bakery, LLC (1406); and 55 Hudson Yards Bakery, LLC (7583).

"Motion")[2] filed by Cosmoledo LLC, the debtors and debtors in possession herein (the "Debtors"), seeking, *inter alia*, entry of an order (this "Bidding Procedures Order") approving (a) the Bidding Procedures which are attached hereto as Appendix A and made a part hereof ("Bidding Procedures"), (b) approving the Break-Up Fee and Expense Reimbursement, (c) establishing a deadline for the assertion of cure claims by counterparties to the Debtors' executory contracts and unexpired leases, and (d) approving the manner and form of notices of the cure claim bar date and the hearing on the balance of the relief sought in the Motion, including approval of the Sale; and objections having been filed to the relief sought herein by (a) the Office of the United States Trustee [ECF No.: 56]; (b) the Official Committee of Unsecured Creditors (the "Creditors' Committee") [ECF No.: 74]; (c) Maison Kayser Medatlantique Ltd. [ECF No.:73] and (d) One Hudson Yards Owner, LLC [ECF No.: 75] (the "Objections"); and upon the record of these cases and the record of the hearing held to consider approval of the Bidding Procedures and the form and manner of notice of the Bidding Procedures, the Auction, the Sale Hearing and the Assumption and Assignment Procedures held on September 30, 2020 (the "Bidding Procedures Hearing"); after due deliberation and sufficient cause appearing therefore; it is hereby

## FOUND AND DETERMINED THAT:

A.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

B.    This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A).

C.    Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    The statutory and legal predicates for the relief requested in the Motion, Sections 105, 363, 365, 503, and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, and 9014 have been satisfied.

---

[2]    Unless otherwise expressly defined herein, any capitalized term shall have the meaning ascribed to such term in the Motion or the Sale Agreement, as defined below, as applicable.

E.      Good and sufficient notice of the Motion, and the Bidding Procedures as sought in the Motion has been given under the circumstances, and no other or further notice is required except as set forth herein and in the Bidding Procedures. A reasonable opportunity to object or be heard regarding the Bidding Procedures has been afforded to parties in interest.

F.      The Bidding Procedures are fair, reasonable and appropriate and represent the best method for maximizing the return for the Assets.

G.      The Bidding Procedures and the Sale Agreement have been negotiated in good faith and at arm's length.

H.      The Debtors have articulated good and sufficient business reasons for approving (i) the Bidding Procedures, (ii) the Assumption and Assignment Procedures, (iii) the Bid Protections, and (iv) the form and manner of notice of the Auction and the Sale Hearing.

I.      The Assumption and Assignment Procedures are fair, reasonable, and appropriate, and comply with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

J.      The Assumption and Assignment Procedures have been tailored to provide adequate opportunity for all non-Debtor Counterparties to the Transferred Contracts and other Proposed Assumed Contracts to raise any objections to the proposed assumption and assignment or to the Cure Costs.

K.      MK USA, LLC (the "Stalking Horse Bidder") shall act as the stalking horse bidder pursuant to the Sale Agreement annexed to the Motion, and the Offer embodied therein shall be subject to higher and better offers in connection with the Bidding Procedures.

L.      The Stalking Horse Bidder is not an "insider" or "affiliate" of any of the Debtors, as those terms are defined in section 101 of the Bankruptcy Code, and no common identity of incorporators, directors, or controlling stockholders exists between the Stalking Horse Bidder and

the Debtors. The Stalking Horse Bidder and its counsel and advisors have acted in "good faith" within the meaning of section 363(m) of the Bankruptcy Code in connection with the Stalking Horse Bidder's negotiation of the Bid Protections and the Bidding Procedures and the Stalking Horse Bidder's negotiation and entry into the Sale Agreement.

M.       As set forth in the Supplemental Affidavits, the Sale Notice is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Bidding Procedures, the Assumption and Assignment Procedures, the Auction, the Sale Hearing, and the sale of the Purchased Assets as set forth under the Sale Agreement free and clear of any liens, claims, encumbrances, or interests pursuant to section 363(f) of the Bankruptcy Code) (with such liens, claims, encumbrances, or interests attaching to the proceeds of any such sale), and any and all objection deadlines related thereto, and no other or further notice shall be required for the Motion, the Sale, or the assumption and assignment of the Assumed Contracts except as expressly required herein.

N.       The notice of Potential Assumption and Assignment of Executory Contracts and Unexpired Leases and Establishment of Cure Claims Bar Date for Non-Debtor Counterparties to Executory Contracts and Unexpired Leases (the "Cure Notice"), is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the amount asserted by the Debtors' as necessary to cure executory contracts and unexpired leases to be assumed by the Debtors and assigned to a Successful Bidder at the Sale Hearing and provide adequate assurance of future performance under Sections 365(b) and 365(f) of the Bankruptcy Code;

O.       Good and sufficient cause has been shown to waive the stay of effectiveness of this Order under Bankruptcy Rules 6004(h), 6006(d), 7062, or 9014, or any applicable provisions of the Bankruptcy Rules or the Local Rule.

**AND IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted to the extent set forth herein.

2.      All objections, including the Objections, to the relief granted herein that have not been withdrawn with prejudice, waived, or settled, and all reservations of rights included in such objections, hereby are overruled and denied on the merits with prejudice.

### Approval of the Bidding Procedures and Bid Protections

3.      The Bidding Procedures as attached are hereby approved and shall govern the bids and proceedings related to the sale of the Purchased Assets and the Auction. The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Order shall not diminish or otherwise impair the effectiveness of such procedures, it being the Court's intent that the Bidding Procedures are approved in their entirety, as if fully set forth in this Order.  The Debtors are authorized to take all actions necessary or appropriate to implement the Bidding Procedures.

4.      Subject to the right of parties-in-interest to object and the Court's entry of an order approving the sale, the Debtors are authorized to enter into the Sale Agreement, and the Stalking Horse Bid shall be subject to higher or better Qualified Bids, in accordance with the terms and procedures of the Bidding Procedures.

5.      The Bid Protections are approved in their entirety, including, without limitation, payment by the Debtors of the Break-Up Fee and Expense Reimbursement to the Stalking Horse Bidder on the terms and conditions contained in the Bidding Procedures and Sale Agreement, provided however, that to the extent that the Court reduces the portion of the Stalking Horse Bidder's Credit Bid attributable to Cash Collateral to less than $3,400,000, the amount of the Break-Up Fee shall be reduced by 2.5% of such reduction.  For example, if the Court determines

that the Stalking Horse Bidder is only entitled to include in its Credit Bid, Cash Collateral in the amount of $2,400,000, not $3,400,000, the amount of the Break-Up Fee shall be reduced by $25,000 (2.5% of a $1,000,000 reduction).. Except as expressly provided for herein, no other termination payments or fees of any kind are authorized or permitted under this Order.

6.      The Break-Up Fee and Expense Reimbursement shall be accorded treatment as a superpriority administrative expense claim in the chapter 11 cases, senior to all other administrative claims at any time allowed in the chapter 11 cases.

7.      The Bidding Procedures shall apply with respect to any bids for, and the auction and sale of, any or all of the Purchased Assets. The Debtors are authorized to take all actions necessary or appropriate to implement the Bidding Procedures. Notwithstanding anything contained in the Sale Agreement to the contrary, immediately upon entry of this Order the Debtors are authorized to market and solicit higher and better offers from prospective purchasers for their assets being offered for sale.

8.      The deadline for submitting Qualified Bids for some or all of the Purchased Assets is **October 20, 2020 at 5:00 p.m.** (Eastern Time)(the "Bid Deadline"); provided that the Debtors shall have the right, to extend the Bid Deadline for any reason whatsoever, in their reasonable business judgment and in consultation with the Creditors' Committee, for all or certain Prospective Bidders, without further order of the Court, subject to providing notice to the Stalking Horse Bidder, and all other Prospective Bidders.  Any party that does not submit a Qualified Bid by the Bid Deadline in accordance with the Bidding Procedures will not be allowed to (a) submit any offer after such deadline for the applicable assets, or (b) participate in the Auction for the applicable assets; provided that the foregoing shall not preclude the Debtors after the applicable Bid Deadline from marketing to any person, or auctioning, or any parties from bidding on, any

assets whether included in the Auction or not.

9.      The Stalking Horse Bidder is hereby deemed a Qualified Bidder, and the Offer, as reflected in the Sale Agreement, is a Qualified Bid for all purposes and requirements pursuant to the Bidding Procedures.  If no other Qualified Bid in respect of the Purchased Assets are received on or before Bid Deadline, the Debtors shall not conduct an Auction for the Purchased Assets, and the Stalking Horse Bidder will be named the Successful Bidder. The Stalking Horse Bidder shall provide the Debtors with a final list of Contracts or Lease of which it seeks assumption and assignment by no later than two (2) days prior to the Bid Deadline.  Such list shall constitute the final Schedule 2.6(a) under the Sale Agreement.  The Debtors will file the final Schedule 2.6(a) on the docket and serve such schedule on all interested parties on the day of receipt.

10.     Nothing in this Order or the Bidding Procedures shall be construed as approving the Sale Agreement or any transaction contemplated therein prior to approval by this Court at the Sale Hearing and all such transactions remain subject to such approval.

11.     Notwithstanding anything to the contrary in this Order, the Creditors' Committee shall be entitled, but is not directed, to conduct an expedited investigation of the Stalking Horse Bidder's secured claim and all alleged liens and security interests of the Stalking Horse Bidder. The Creditors' Committee shall have until **October 14, 2020** to file an objection to the Stalking Horse Bidder's right to, or amount of, any credit bid.  If the Creditors' Committee does not file an objection by such time, the maximum amount of the Stalking Horse Bidder's Approved Credit Bid shall be $5,400,000.

12.     In the event the Creditors' Committee timely files an objection to the Stalking Horse Bidder's right to credit bid, the Debtors shall request a hearing to be held by no later than one day prior to the Bid Deadline to determine of the proper amount of the Stalking Horse Bidder's

credit bid. If any such hearing is held, the Debtors are directed to modify the timeline set forth herein, and in the Bidding Procedures, to postpone the Bid Deadline and related dates, as necessary until the date that is no later than two (2) days after the Court makes a determination on the amount of the Stalking Horse Bidder's credit bid.

13.    Nothing herein shall be construed as limiting any parties' rights to file a response to any objection by the Creditors' Committee.

14.    Notwithstanding anything contained in the Sale Agreement, in the event the Court determines that the Stalking Horse Bidder does not have the right to Credit Bid and the Stalking Horse Bidder elects not to proceed with the sale under the Sale Agreement, to the extent such termination is permitted under the Sale Agreement, the Stalking Horse Bidder's entitlement to a Break Up Fee or Expense Reimbursement shall be subject to further order of this Court and all parties' rights to seek approval of or object to the payment of any Break Up Fee or Expense Reimbursement are hereby preserved.

15.    Subject to the terms of this Order and the terms of any subsequent Order of this Court regarding the sufficiency or amount of any credit bid, nothing contained herein shall otherwise prejudice or impair the right of the Stalking Horse Bidder to credit bid, as set forth in the Bidding Procedures on such assets that are subject to their respective liens in their respective priorities.

### Conduct of the Auction

16.    If the Debtors receive at least one Qualified Bid in respect of the Purchased Assets by the Bid Deadline, the Debtors shall conduct the Auction of the Purchased Assets in accordance with the Bidding Procedures.

17.    The Auction shall be held on **October 23, 2020 at 10:00 a.m.** (Eastern Time) at the

offices of Mintz & Gold LLP, 600 Third Ave., 25th Floor, New York, New York 10016, or by videoconference. The Debtors, in consultation with the Creditors' Committee, have the right to extend, postpone or cancel the Auction at any time, for any reason.

18.    The Auction shall be conducted openly, and all creditors and other parties in interest shall be permitted to attend; provided that the Debtors may, in their reasonable business judgment, and in consultation with the Creditors' Committee, establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of or accompany a Qualified Bidder, or other parties in interest at the Auction. The proceedings of the Auction shall be transcribed.

19.    Subject to the rights of the Stalking Horse Bidder and this Order, the Debtors, in consultation with the Creditors' Committee, shall have the right, as they may reasonably determine to be in the best interests of their estates, to carry out the Bidding Procedures, including, without limitation, to: (a) determine which parties are Prospective Bidders, (b) determine which Prospective Bidders are Qualified Bidders; (c) determine which bids are Qualified Bids; (d) determine which bid or bids are the Successful Bid and Back-Up Bid (as such terms are defined in the Bidding Procedures), each as it relates to the Auction; (e) adjourn or cancel the Auctions and/or the Sale Hearings in open court without further notice; (f) modify the Bidding Procedures consistent with their fiduciary duties and bankruptcy law; and (g) withdraw the Motion at any time with or without prejudice.

20.    The Debtors shall have the right, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law, and in consultation with the Creditors' Committee, to modify the Bidding Procedures, including (a) waive terms and conditions with respect to any Prospective Bidder; (b) extend the deadlines set forth in the Bidding Procedures; (c)

announce at the Auction modified or additional procedures for conducting the Auction; and (d) provide reasonable accommodations to the any Qualified Bidder with respect to such terms, conditions, and deadlines of the bidding and Auction process to promote further bids by such bidders on any Assets in each case, to the extent not materially inconsistent with the Bidding Procedures and this Order.  Except as provided in the Sale Agreement, nothing in this Order or the Bidding Procedures shall obligate the Debtors to consummate or pursue any transaction with respect to any Asset with a Qualified Bidder.

## Sale Hearing and Service of Notice

21.     The Sale Hearing shall be held on **October 29, 2020, 2020 at 10:00 a.m.** (Eastern Time) before the Honorable Michael E. Wiles United States Bankruptcy Judge, at the United States Bankruptcy Court, 1 Bowling Green, New York, New York 10004, by videoconference or teleconference, to consider (a) approval of the Sale Agreement and the sale of the Assets, pursuant to §§ 105(a), 363(b), (f), (m) and (n) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 9014, free and clear of all liens, claims and encumbrances, subject to higher or better offers; and (b) approval of the assumption and assignment of executory contracts and unexpired leases of the Debtor, pursuant to § 365 of the Bankruptcy Code and Bankruptcy Rule 6006. Notwithstanding the foregoing, the Debtors may, after consultation with the Creditors' Committee, seek an adjournment of the Sale Hearing, as the Debtors deem appropriate in the exercise of their reasonable business judgment.

22.     On or before the date that is one (1) day following entry of this Order, (the "Service Deadline"), the Debtors shall serve, by regular mail and by email, where possible, a copy of this Order, together with appendices thereto, upon: (a) Katten Muchin Rosenman LLP, 575 Madison Avenue New York, New York 10022, Attn: Jerry L. Hall, Esq., jerry.hall@katten.com, counsel to

the Debtors' senior secured lender and Stalking Horse Bidder; (b) Hahn & Hessen LLP, 488 Madison Avenue, New York, NY 10022, Attn: Mark Indelicato, Esq., mindelicato@hahnhessen.com, proposed counsel for the Creditors' Committee; (c) all entities known to assert a lien, claim, interest or encumbrance in the Debtors' assets; (d) all parties that have previously notified the Debtors of their interest in acquiring all or a portion of the Debtors' assets; (e) the Office of the United States Trustee, 201 Varick Street, Room 1006, New York, New York 10014 Attn: Brian Masumoto, Esq., Brian.Masumoto@usdoj.gov; (f) all counterparties to Assumed Contracts and Leases; (g) all relevant taxing authorities; (h) all parties that have filed a notice of appearance in this case as of the date of this Order; (i) the Small Business Administration; and (j) the United States Attorney's Office for the Southern District of New York.

23.    The form of notice of the proposed Sale, the Auction and the Sale Hearing (the "Sale Notice"), annexed as Appendix C hereto, is approved, and the Debtors are directed to serve a copy of the Sale Notice upon (a) all known creditors of the Debtors, and (b) all federal, state and local taxing authorities in jurisdictions in which the Debtors operates their business, by regular mail on or before the Service Deadline to the extent any such parties are not to receive a copy of this Order pursuant to the preceding decretal paragraph.

24.    Responses or objections, if any, to the relief sought at the Sale Hearing, other than in connection with a Cure Claim (as defined below) and the auction process and selection of the Successful Bidder, must: (a) be made in writing; (b) state with particularity the grounds therefor; (c) conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York; (d) be filed with the United States Bankruptcy Court for the Southern District of New York; and (e) served upon (i) Mintz & Gold LLP 600 Third Ave., 25th Fl., New York, New York 10016, Attn: Andrew Gottesman, Esq., gottesman@mintzandgold.com,

proposed counsel for the Debtors; (ii) Office of the United States Trustee for the Southern District

of New York 201 Varick Street, Room 1006, New York, NY 10014, Attn: Brian Masumoto, Esq.,

Brian.Masumoto@usdoj.gov; (iii) Willkie Farr and Gallagher, 787 Seventh Avenue New York,

New York 10019, Attn: Paul V. Shalhoub, Esq., pshalhoub@willkie.com, counsel to the holder of

Cosmoledo's equity interests; (iv) Katten Muchin Rosenman LLP, 575 Madison Avenue New

York, New York 10022, Attn: Jerry L. Hall, Esq., jerry.hall@katten.com, counsel to the Debtors'

senior secured lender and Stalking Horse Bidder; (v) Hahn & Hessen LLP, 488 Madison Avenue,

New York, NY 10022, Attn: Mark Indelicato, Esq., mindelicato@hahnhessen.com, proposed

counsel to the Creditors' Committee; and (iv) all other parties who have requested notice under

Bankruptcy Rule 2002, so as to be received no later than **October 21, 2020 at 5:00 p.m.** (Eastern

Time).

### **Assumption and Assignment Procedures**

25.     The form of notice of Potential Assumption and Assignment of Executory

Contracts and Unexpired Leases and Establishment of Cure Claims Bar Date for Non-Debtor

Counterparties to Executory Contracts and Unexpired Leases (the "Cure Notice"), annexed as

Appendix D hereto, is approved.

26.     The following procedures (the "Assumption and Assignment Procedures") shall be

used in connection with any executory contracts and unexpired leases proposed to be assumed and

assigned to the Successful Bidder:

   a.     The Debtors are directed to serve a copy of the Cure Notice upon all non-
          debtor counterparties to the executory contracts and unexpired leases set
          forth on the parties annexed thereto, by electronic mail or overnight delivery
          on or before **October 21, 2020** at 4:00 p.m. (Eastern Time).

   b.     To the extent of any dispute in connection with: (i) the cure amounts listed
          on the Cure Notice, and/or (ii) the form and manner of adequate assurance
          of future performance proposed by the Successful Bidder, all non-debtor
          counterparties to the executory contracts and unexpired leases listed thereon

are directed to electronically file an objection with the Clerk of the Bankruptcy Court, setting forth the basis for such objection (the "Cure Claim"), and serve a copy of such Cure Claim upon (i) Mintz & Gold LLP, 600 Third Ave., 25th Floor, New York, New York 10016, Attn: Andrew Gottesman, Esq., gottesman@mintzandgold.com, proposed counsel to the Debtors, (ii) Katten Muchin Rosenman LLP, 575 Madison Avenue New York, New York 10022, Attn: Jerry L. Hall, Esq., jerry.hall@katten.com, counsel to the Debtors' senior secured lender and Stalking Horse Bidder; and (iii) Hahn & Hessen LLP, 488 Madison Avenue, New York, NY 10022, Attn: Mark Indelicato, Esq., mindelicato@hahnhessen.com, proposed counsel to the Creditors' Committee, so as to be received on or before **October 27, 2020 at 12:00 p.m.** (Eastern Time) (the "Cure Claim Deadline"). A non-debtor party that agrees with the amount shown on the attached Appendix B is not required to file a Cure Claim.

c.   Any party that fails to file a Cure Claim by the Cure Claim Deadline shall be forever barred from asserting a Cure Claim against the Debtors, their estate and/or any purchaser of the Assets under such executory contract or lease;

d.   The Debtors shall make good faith and reasonable efforts to resolve any disputed Cure Claims with the non-debtor counterparty to such contract or lease in advance of the Sale Hearing;

e.   Any unresolved Cure Claims shall be scheduled for resolution at the Sale Hearing;

f.   Cure Claims (if any) under any executory contracts and unexpired leases to be assumed and assigned to the Successful Bidder shall be paid, as follows:

i.   If there is no dispute as to the amount of the Cure Claim, such Cure Claim shall be paid by the Successful Bidder at the time of the closing of the transaction;

ii.  If there is a dispute as to the amount of the Cure Claim but the Successful Bidder desires to proceed with the assumption and assignment of the applicable contract, (x) the undisputed portion of the Cure Claim shall be paid by the Successful Bidder at the time of the closing of the transaction, and (y) the Successful Bidder, shall make provision for the payment of the disputed portion of the Cure Claim in form and substance reasonably satisfactory to the Debtors, the Successful Bidder and the counterparty to such contract or lease, or (if no agreement can be reached) pursuant to order of this Court. Upon the entry of a final order determining the amount of the Cure Claim, the balance of the Cure Claim, if any, shall be paid by the Successful Bidder to the counterparty; and

iii. If there is a Cure Claim and the Successful Bidder elects to defer a

decision on assumption and assignment until final adjudication of the amount of the Cure Claim, then (x) such contract or lease will not be assumed or assigned at the time of closing of the transaction, (y) the Cure Claim will be adjudicated by the Court, and (z) within two (2) business days following the entry of a final order determining the amount of the Cure Claim, the Successful Bidder shall notify the Debtors and the counterparty that the Successful Bidder either (A) desires to have the applicable contract or lease assumed and assigned (in which case the Successful Bidder shall pay the allowed Cure Claim), or (B) has determined not to have the applicable contract or lease assumed and assigned.

## **Other Related Relief**

27.     All persons and entities (whether or not selected as a Qualified Bidder) that submit a bid for any of the Debtors' Assets during the sale process, including at the Auctions, shall be deemed to have knowingly and voluntarily (a) submitted to the exclusive jurisdiction of this Court with respect to all matters related to the terms and conditions of the transfer of Assets, the Auction; (b) consented to the entry of a final order by the Court in connection with the Motion or this Order (including any disputes relating to the bidding and Auction process, the Auction, and/or any Sale) to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution; and (c) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

28.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, or 9014, or any applicable provisions of the Bankruptcy Rules or the Local Rules or otherwise stating the contrary, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and any applicable stay of the effectiveness and enforceability of this Order is hereby waived.

29.     The Debtors are authorized to take all action necessary to effectuate the relief granted in this Order.

30.     The Court shall retain jurisdiction over any matter or dispute arising from or

relating to the implementation of this Bidding Procedures Order.

Dated: October 2, 2020
        New York, New York


                                        /s/ **Michael E. Wiles**
                                        Hon. Michael E. Wiles
                                        United States Bankruptcy Judge

**Appendix A**

**Bidding Procedures**

**Bidding Procedures**

Cosmoledo LLC and its affiliated debtors and debtors in possession (collectively, the "Debtors") are debtors in possession in chapter 11 cases being jointly administered under Case No. 20-12117 in the United States Bankruptcy Court for the Southern District of New York. On September 30, 2020 the Bankruptcy Court entered an order (the "Bidding Procedures Order") authorizing the Debtors to, among other things, market substantially all of their assets (the "Assets") through the Bidding Procedures described herein (the "Bidding Procedures"), and schedule an auction of the assets (the "Auction") and a sale hearing (the "Sale Hearing") to consider the sale of the assets to the successful bidder (a "Sale"). These Bidding Procedures are designed to provide interested parties with the opportunity to qualify as bidders and participate in the Auction on the terms set forth in the "stalking horse" sale agreement attached hereto as Schedule 1 (as may be amended up to five (5) days before the Bid Deadline, the "Sale Agreement") and to facilitate a full and fair auction and sale process.

The key dates and procedures are as follows:[3]

| Date | Event |
|---|---|
| October 20, 2020 at 5:00 p.m. | Bid Deadline |
| October 21, 2020 at 5:00 p.m. | Cure Notice Deadline (including adequate assurance information) |
| October 21, 2020 at 5:00 p.m. | Sale Objection Deadline (other than Cure Objection) |
| October 23, 2020 at 10:00 a.m. | Auction |
| October 24, 2020 at 5:00 p.m. | Deadline to file and serve Notice of Auction Results |
| October 27, 2020 at 12:00 p.m. | Cure Objection Deadline |
| October 29, 2020 at 10:00 a.m. | Sale Hearing |

**Auction**:    The Auction, if necessary, will be held at the offices of proposed counsel to the Debtors, Mintz & Gold LLP, 600 Third Ave., 25th Fl., New York, New York 10016; by video conference or audio conference. All auction proceedings will be transcribed and recorded. The Debtors have the right to extend, postpone or cancel the Auction at any time, for any reason.

**Sale Hearing**: The Sale Hearing will be held at the United States Bankruptcy Court, 1 Bowling Green, New York, New York 10004, before the Honorable Michael E. Wiles, United States

---

[3] All times are Eastern Time.

Bankruptcy Judge for the Southern District of New York, by videoconference or audioconference.

**Bid Deadline**: All bids must be submitted to (i) the Debtors' proposed counsel, Mintz & Gold LLP, 600 Third Ave., 25th Fl., New York, New York 10016, Attn: Andrew Gottesman, Esq., gottesman@mintzandgold.com, (ii) Hahn & Hessen LLP, 488 Madison Avenue, New York, NY 10022, Attn: Mark Indelicato, Esq., mindelicato@hahnhessen.com, proposed counsel to the Official Committee of Unsecured Creditors, appointed in these cases (the "Creditors' Committee"); and (iii) Katten Muchin Rosenman LLP, 575 Madison Avenue New York, New York 10022, Attn: Jerry L. Hall, Esq., jerry.hall@katten.com, counsel to the Debtors' senior secured lender and Stalking Horse Bidder, by no later than the Bid Deadline.

a.  <u>Due Diligence</u>. To the extent any party wishes to undertake any due diligence with respect to the Assets in connection with a potential bid (a "Prospective Bidder"), such Prospective Bidder must (i) execute a non-disclosure agreement (to the extent such an agreement has not been previously executed and delivered by such proposed bidder) in form and substance acceptable to the Debtors, and (ii) provide sufficient information, as reasonably determined by the Debtors and the Creditors' Committee, to allow the Debtors and the Creditors' Committee to reasonably determine that such Prospective Bidder has, or can obtain, the financial wherewithal and any required internal corporate, legal, or other authorizations to close a Sale, including, but not limited to, current audited financial statements of the interested party (or such other form of financial disclosure reasonably acceptable to the Debtors in their discretion) prior to undertaking any such due diligence and all such due diligence must be undertaken and completed prior to the Bid Deadline. An interested party shall be deemed a "Prospective Bidder" if the Debtors determine in their reasonable discretion and in consultation with the Creditors' Committee, that an interested party has satisfied the above requirements.

   i.  Until the Bid Deadline (as defined below), the Debtors will provide Prospective Bidders with reasonable access to a data room and any other additional information that the Debtors believe to be reasonable and appropriate under the circumstances. The Debtors will work to accommodate all reasonable requests for additional information and due diligence access from Prospective Bidders. All requests for information should be directed to John Sordillo (john.sordillo@CBIZ.com) of the Debtors' proposed financial advisors, CBIZ Accounting, Tax and Advisory of New York, LLC ("CBIZ").

   ii.  Neither the Debtors nor any of their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Locations to any person or entity who is not a Prospective Bidder or a Consultation Party or who does not comply with the participation requirements set forth above.

   iii.  Once an interested party is deemed a Prospective Bidder, its identity may, in the Debtors' discretion, be disclosed to the Stalking Horse Bidder.

   iv.  Unless otherwise determined by the Debtors, the availability of additional due diligence to a Prospective Bidder will cease if (i) the Prospective Bidder does not become a Qualified Bidder or (ii) these Bidding Procedures are terminated.

v. Prospective Bidders shall be entitled to bid on some or any part of the Purchased Assets and Assumed Liabilities under the Sale Agreement, or any assets which are not specially made part of the Sale Agreement.

vi. The Debtors shall determine, after consultation with the Committee, in its reasonable business judgment, if a bid is a Qualified Bid, including consideration of the financial qualifications of the bidder. No bid shall be a Qualified Bid if such bid is subject to a due diligence, financing, or other contingency. After taking account of reasonable non-monetary considerations (e.g., without limitation, execution risk), to the extent that the aggregate amount of qualified bids exceeds the Initial Overbid amount,  (provided that bids may be aggregated only to the extent they are for separate, non-overlapping assets), the Debtors shall conduct an auction.

b. <u>Qualified Bid</u>. A bid that meets the following qualifications will be considered a "Qualified Bid":

i. The bid must be received in accordance herewith by the Bid Deadline.

ii. The bid must:

a. Be in writing;

b. State that it is irrevocable and acknowledge that such bid may be designated a back-up bid;

c. Be accompanied by a duly executed sale agreement, marked to reflect variations to the Sale Agreement;

d. Be accompanied by a deposit in immediately available funds of not less than twenty (20%) percent of the full amount of any proposed purchase price (including the value of any credit bid or other non-monetary consideration, but not including the amount of any potential Cure Costs or the amount of any other Assumed Liabilities) (the "Deposit"). The Deposit will be subject to forfeiture upon a breach by the bidder and non-refundable if the bidder is selected as a Successful Bidder (as defined below) and fails to consummate the purchase (other than as a result of a breach by the Debtors). The Deposit will be refundable by the earlier of thirty (30) days after the Auction (ii) the consummation of the transaction with the Successful Bidder, and (iii) the release of such bid by the Debtors (such date, the "Back-Up Termination Date") if the bidder is not selected as the Successful Bidder;

e. State explicitly that it is not subject to any further due diligence, financing or other contingency; and

f. State specifically to which of the Purchased Assets the bid applies, it being understood that any bid may be for all or any portion of the Purchased Assets under the Sale Agreement; *provided, however*, that no bid may seek

assignment of Debtors' PPP Loan and any bid that proposes to take assignment of Debtors' PPP Loan shall not be a Qualified Bid.

iii.   Any secured party, including the Stalking Horse Bidder, in connection with the Sale of all or a portion of the Purchased Assets, may seek to credit bid all or a portion of their secured claims for their respective collateral (each such bid, a "Credit Bid") pursuant to section 363(k) of the Bankruptcy Code; *provided that* any such Credit Bid shall include cash consideration (i) sufficient to pay in full all claims for which there are valid, perfected, and unavoidable liens or PACA/PASA trust claims on any Assets included in such Credit Bid that are senior in priority to those of the party seeking to Credit Bid (unless such senior lien holder consents to alternative treatment), or deemed not to be part of the Debtors' estates, and (ii) pay the cash payments approved under the Bid Protections and otherwise complies with any orders of the Bankruptcy Court approving debtor-in-possession financing or use of cash collateral.

iv.   The proposed purchase price for a Qualified Bid shall not be less than $9,135,400.00 (the "Initial Overbid").[4]

v.   Without limiting the generality of the foregoing, any Qualified Bid shall be for some or any part of the Purchased Assets and Assumed Liabilities under the Sale Agreement, or any assets which are not specially made part of the Sale Agreement, on an as-is, where-is basis and shall not include any due diligence, financing or other contingency.   A bid must fully describe all Assumed Liabilities that are part of such bid, including the assumption of any leases and/or executory contracts that such bidder seeks to assume and related cure costs assume and the amount of the related cure costs that such bidder is agreeing to assume as part of its bid.

vi.   The bid must be expressly made subject to the Debtors' obligations to pay the Break-Up Fee and Expense Reimbursement pursuant to the terms of the Sale Agreement, as modified by the Bid Procedures Order.

vii.   Each bid must include a copy of an asset purchase agreement reflecting the terms and conditions of the Bid, which agreement must be marked to show any proposed amendments and modifications to Sale Agreement (the "Proposed APA").

viii.   Simultaneously with the delivery of a Proposed APA, a Prospective Bidder

---

[4] The Initial Overbid is equal to the sum of (A) the cash portion of the Purchase Price as defined in the Sale Agreement of not less than $3,000,000, (B) the maximum credit bid amount (subject to the Creditors' Committee's right to challenge) of $5,400,000 (the "Credit Bid"), (C) the Break-Up Fee of $160,400 (2.5% of $6,416,0000, representing the cash portion of the Purchase Price, plus the amount of Cash Collateral included in the Credit Bid), (D) $500,000, the maximum amount of the Expense Reimbursement, and (E) $75,000, the incremental initial overbid amount.

shall deliver financial information evidencing that (a) such party has the financial wherewithal to consummate the proposed transaction on the terms proposed and (b) such party can provide adequate assurance of the future performance of all Contracts and Leases of which it seeks an assignment under Sections 365(b)(1)(C) and 365 (f)(2)(b) of the Bankruptcy Code. Such financial information may include current audited or verified financial statements and/or a letter from a depository institution indicating the ability to close on a proposed transaction. In the event the financial information pertains to the parent or other equity holder of an acquisition affiliate, the bid of the affiliate shall be guaranteed by the parent or other equity holder.

ix. Only those Prospective Bidders having submitted Qualified Bids (a "Qualified Bidder") will be permitted to participate in the Auction. The Debtors' counsel, upon consultation with the Committee, will promptly notify each Prospective Bidder after the Bid Deadline whether it is a Qualified Bidder. The Stalking Horse Bidder shall be deemed a Qualified Bidder at any Auction.

x. Except as provided with respect to the Stalking Horse Bidder, a Qualified Bid must include a statement that the bid does not entitle such bidder to any break-up fee, termination fee, expense reimbursement, or similar type of payment or reimbursement and a waiver of any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code related to bidding for the Assets.

xi. The bid must include the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wish to discuss the bid.

xii. A copy of a board resolution or similar document demonstrating the authority to make a binding and irrevocable bid on the terms proposed and to consummate the contemplated transaction.

xiii. The entity submitting a bid shall also provide evidence or affirm under oath that all necessary approvals have been obtained authorizing the submission of the bid by such entity.

xiv. There must be no communications between and amongst Prospective or Qualified Bidders regarding the Debtors unless the Debtors have previously authorized such communication in writing. The Debtors reserve the right, in their reasonable business judgment and in consultation with the Creditors' Committee, to disqualify any Prospective Bidder(s) or Qualified Bidder(s) that have communications between and amongst themselves.

c. <u>Auction Procedures and Bidding Increments</u>.

i. In the event one or more Qualified Bids (in addition to the Stalking Horse Bid) are received by the Debtors prior to the Bid Deadline, the Debtors will conduct

the Auction. No later than one (1) business day prior to the Auction, the Debtors shall circulate to each Qualified Bidder copies of the Qualified Bid determined to be the highest or best Qualified Bid submitted as of the Bid Deadline, and that will constitute the opening bid at the Auction.

ii. The Debtors, in consultation with the Creditors' Committee, have the right to determine, in their sole discretion, the highest or best Qualified Bid (or collection of Qualified Bids) to serve as the starting point at the Auction.

iii. Between the date the Debtors notify a Prospective Bidder that it is a Qualified Bidder and the Auction, the Debtors may discuss, negotiate or seek clarification of any Qualified Bid from a Qualified Bidder. Without the written consent of the Debtors, a Qualified Bidder may not modify, amend or withdraw its Qualified Bid, except for proposed amendments to increase the purchase price or otherwise improve the terms of its Qualified Bid, during the period that such Qualified Bid remains binding as specified herein; provided that any Qualified Bid may be improved at the Auction as set forth herein.

iv. At the Auction (A) all bids shall be made and received in one room, or on video conference, on an open basis, and all other bidders shall be entitled to be present for all bidding with the understanding that the true identity of each bidder shall be fully disclosed to all other bidders and that all material terms of each bid will be fully disclosed to all other bidders throughout the entire Auction; (B) the opening bid at the Auction shall not be less than the Initial Overbid; (C) all offers subsequent to the opening bid at the Auction must exceed the prior offer by not less than $50,000 ("the Subsequent Incremental Bid Amount"); (E) with respect to any such further overbid submitted by the Stalking Horse Bidder, the consideration offered by the Stalking Horse Bidder shall be deemed to include the full amount of the Break-Up Fee and Expense Reimbursement potentially payable to the Stalking Horse Bidder; and (E) bidding at the Auction will continue until such time as no further bids are made within the time limit announced by Debtors' counsel, upon consultation with the Creditors' Committee (if any), and the Debtors shall have the option to continue the Auction.

v. The Debtors reserve the right to and may, after consultation with the their professionals and the Creditors' Committee, reject at any time before entry of the relevant Sale Order any bid that, in the Debtors' judgment, is (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, these Bidding Procedures, or the terms and conditions of the Sale; or (iii) contrary to the best interests of the Debtors and their estates, except that if the Stalking Horse Bid is the only Qualified Bid the foregoing provisions of this sentence will be inoperative. The Debtors may consider any factors, including the factors set forth above, regarding the form and content of Qualified Bids and the Debtors' review of bids. No attempt by the Debtors to reject a bid under this paragraph will modify any rights of the Debtors or the Stalking Horse Bidder under applicable Stalking Horse Agreement (as may be consensually

modified at any Auction).

vi.   Upon conclusion of the Auction, the Debtors, upon consultation with its professionals and the Creditors' Committee, shall determine the highest or otherwise best bid (the "Successful Bidder"), and such bid shall be submitted for approval to the Bankruptcy Court.  Subject to the Court's calendar, the Sale Hearing will occur no later than three (3) business days after the conclusion of the Auction.

vii.  The Successful Bidder shall have the burden of establishing by competent evidence that it qualifies for section 363(m) protections, and that it is capable of providing adequate assurance of future performance with respect to any executory contract or unexpired lease it wishes to have assumed and assigned pursuant to section 365, and it is entitled to credit bid pursuant to section 363(k) and otherwise complies with its obligations under the Bankruptcy Code.

viii. If the Debtors do not receive any Qualified Bids, the Debtors will report the same to the Bankruptcy Court and the Creditors' Committee and proceed with the Sale Hearing and no Auction shall be held.

ix.   Debtors' counsel reserves the right to establish such other reasonable rules and procedures for the conduct of the Auction as may be necessary, provided that such rules and procedures are publicly announced at the Auction.

THE SUCCESSFUL BID AND THE BACK-UP BID SUBMITTED AT THE AUCTION SHALL CONSTITUTE IRREVOCABLE OFFERS AND BE BINDING ON THE SUCCESSFUL BIDDER AND THE BACK-UP BIDDER FROM THE TIME THE BIDS ARE SUBMITTED UNTIL THE LATER OF THE ENTRY OF THE SALE ORDER AND THE BACK-UP TERMINATION DATE. IN THE EVENT THAT THE SUCCESSFUL BIDDER IS REQUIRED TO AND DOES NOT CLOSE ON THE SALE AS CONTEMPLATED IN THE SALE AGREEMENT, THE DEBTORS SHALL HAVE THE RIGHT TO RETAIN SUCH BIDDER'S DEPOSIT AND CLOSE THE SALE WITH THE BACK-UP BIDDER (WITH SUCH BACK-UP BIDDER BECOMING THE SUCCESSFUL BIDDER ON THE TERMS OF ITS LAST BID).

ANY QUALIFIED BID THAT IS NOT THE SUCCESSFUL BID OR THE BACK-UP BID SHALL BE DEEMED WITHDRAWN AND TERMINATED AT THE CONCLUSION OF THE SALE HEARING, AND SUCH BIDDER'S DEPOSIT SHALL BE PROMPTLY RETURNED.

d.  Bid Protections. The Break-Up Fee and Expense Reimbursement shall be payable to the Stalking Horse Bidder only under the following terms and conditions:

i.   If a person other than the Stalking Horse Bidder is determined to be the Successful Bidder for the Assets and the Debtors close a transaction with such other Successful Bidder, the Stalking Horse Bidder shall receive the Break-Up Fee and Expense Reimbursement, payable at closing from the proceeds of such transaction; and

    ii.    The Break-Up Fee and the Expense Reimbursement shall be accorded treatment as a superpriority administrative expense claim in these Chapter 11 cases.

<u>Reservation of Rights</u>

The Debtors reserve the right to modify these Bidding Procedures at or prior to the Auction, in consultation with the Creditors' Committee, without the need of further order of the Bankruptcy Court, including to (1) extend any of the deadlines set forth in the Bidding Procedures, and (2) adjourn the Auction and /or the Sale Hearing (the latter subject to the Bankruptcy Court's calendar).

**Schedule 1**

**Stalking Horse Sale Agreement**

(*Revised Version to be Filed*)

**Appendix B**

**List of Executory Contracts and Unexpired Leases and Cure Amounts**

**Subject to further revision if additional contracts come to light at a later date
**Agreement descriptions and dates are for informationally purposes only

| Debtor Entity | Counterparty | Agreement Description | Original Date | Estimated Cure Amounts as of 8/31/20 |
|---|---|---|---|---|
| Cosmoledo, LLC | Maison Eric Kayser Medatlantique Limited (as successor-in-interest to Idexar Investments Limited) | Know-How Agreement (as amended as of September 10, 2015) | 7/14/11 | $623,988.99 |
| Cosmoledo, LLC | Maison Eric Kayser Medatlantique Limited (as successor-in-interest to Idexar Investments Limited) | Trademark Agreement (as amended as of September 10, 2015, as further amended as of September 14, 2017, as further amended as of March 20, 2018) | 7/14/11 | $0 |
| 178 Bruckner Commissary, LLC | HUB Truck Rental Corp. | Truck Lease and Service Agreement (the "Truck Agreement") | 9/26/18 | $0 |
| 178 Bruckner Commissary, LLC | HUB Truck Rental Corp. | Schedule A to Truck Agreement, relating to lease of 2019 Isuzu | 9/26/18 | $106,870.00 |
| 178 Bruckner Commissary, LLC | HUB Truck Rental Corp. | Schedule A to Truck Agreement, relating to lease of 2019 Isuzu | 1/16/19 | $107,828.00 |
| 178 Bruckner Commissary, LLC | HUB Truck Rental Corp. | Schedule A to Truck Agreement, relating to lease of 2019 Isuzu | 3/21/19 | $107,828.00 |
| 1800 Broadway Bakery, LLC | Central Park South Associates LLC | Lease | 4/1/13 | $453,071.85 |
| 8 West Bakery LLC | AB 40th Street LLC | Lease, as amended by the First Amendment, dated 8/28/14 | 4/5/12 | $318,235.26 |
| 1535 Third Avenue Bakery, LLC | 200 East 87th Street Associates, L.P. [3rd and 87th LP] | Lease | 3/13/14 | $305,501.48 |
| 575 Lexington Avenue Bakery, LLC | 575 Lex Property Owner, LLC | Lease, as amended by First Amendment, dated | 1/17/17 | $288,824.57 |

| Debtor Entity | Counterparty | Agreement Description | Original Date | Estimated Cure Amounts as of 8/31/20 |
|---|---|---|---|---|
| | | May 2017 | | |
| 400 Fifth Avenue Bakery LLC | Pacific Fifth Avenue Corporation d/b/a Langham Place, New York | Lease | 11/23/16 | $288,198.50 |
| 921 Broadway Bakery, LLC | 149 Fifth Ave. Corp d/b/a William Colavito, Inc. | Lease | 8/15/12 | $268,697.55 |
| 1377 Sixth Avenue Bakery, LLC | The Claridge's Company LLC | Lease | 6/29/16 | $263,530.95 |
| NYC 1294 Third Avenue Bakery, LLC | 175 East 74th Corporation d/b/a Douglas Elliman Property Management | Lease | 2/19/12 | $260,635.00 |
| 2161 Broadway Bakery, LLC | Colorado Associates, LLC | Lease | 5/30/14 | $256,296.42 |
| Cosmoledo, LLC | 373-381 PAS Associates, LLC | Lease | 5/3/16 | $225,914.31 |
| 1400 Broadway Bakery, LLC | ESRT 1400 Broadway, L.P. | Lease | 11/28/16 | $219,117.75 |
| 787 Seventh Avenue Bakery, LLC | FSP 787 Seventh, LLC | Lease | 10/31/17 | $201,419.13 |
| 370 Lexington Avenue Bakery, LLC | Unizo Real Estate NY Three, LLC [BSD 370 Lexington, LLC] | Lease; Limited Personal Guaranty of Cosmoledo, LLC | 6/7/17 | $195,500.59 |
| 55 Hudson Yards Bakery, LLC | One Hudson Yards Owner, LLC | Lease | 9/25/17 | $193,391.33 |
| 685 Third Avenue Bakery, LLC | T-C 685 Third Avenue Owner LLC | Lease | 7/26/17 | $178,559.69 |
| 210 Joralemon Bakery, LLC | 210 Muni LLC | Lease | 6/5/15 | $148,592.00 |
| 178 Bruckner Commissary, LLC | Hoffman Investors Corp. | Lease | 7/22/13 | $118,618.21 |
| 339 Seventh Avenue Bakery, LLC | 333 Seventh, LLC | Lease | 9/25/17 | $70,346.31 |
| 95 Broad Commissary, LLC | 95 Broad Street Realty, LLC | Lease | 8/1/17 | $0 (exited the premises) |
| 95 Broad Commissary, LLC | Café Pushkin Factory, LLC | Sublease, as amended | 7/1/13 | $0 (exited the premises) |
| 178 Bruckner | Artistic Desk Pad & | Lease | 8/1/15 | $0 (exited the |

| Debtor Entity | Counterparty | Agreement Description | Original Date | Estimated Cure Amounts as of 8/31/20 |
|---|---|---|---|---|
| Commissary, LLC | Novelty Co., Inc. | | | premises) |
| 178 Bruckner Commissary, LLC | Annette Lorenz | Agreement for Garbage Container Space | 6/15/20 | $1,060.72 |
| Cosmoledo, LLC | Baltz & Company | Service Agreement for Public Relations Firm | 8/25/17 | $0 |
| Cosmoledo, LLC d/b/a Maison Kayser LLC | The Chefs Warehouse | Cost Plus Program and Rebate Incentive Program | 5/22/18 | $0 |
| Cosmoledo, LLC d/b/a Maison Kayser LLC | DoorDash, Inc. | Doordash Drive Fulfillment Agreement | 10/1/18 | $59,917.62 |
| Breadroll, LLC | CrunchTime Information Systems, Inc. | Master License Agreement | No date specified | $35,190.39 |
| Cosmoledo, LLC d/b/a Maison Kayser LLC | Grubhub Holdings Inc. | Enterprise Restaurant Agreement | 6/29/20 | $0 |
| Cosmoledo, LLC d/b/a Maison Kayser LLC | Ceridian HCM, Inc. | Service Agreement, as amended | 11/30/15 | $25,434.18 |
| Cosmoledo, LLC | Carey Carrington | Consulting Agreement | 2/1/19 | $0 |
| Cosmoledo, LLC d/b/a Maison Kayser LLC | Elliot Associates | Staffing Agreement | 10/3/18 | 193.09 |
| Breadroll, LLC | LevelUp (SCVNGR, Inc.) | Services Agreement (Mobile Marketing Strategy) | 7/15/19 | $0 |
| Breadroll, LLC | Yann Ledoux | Severance Agreement | 10/31/19 | $71,154.87 |
| Cosmoledo, LLC d/b/a Maison Kayser LLC | TDn2K, LLC | Mutual Non-disclosure Agreement | 6/26/19 | $0 |
| Breadroll, LLC | Swede Farms, Inc. | Supply Agreement | 12/18/19 | $49,497.64 |
| 8 West Bakery, LLC | Auto-Chlor System | Dishwashing Machine Agreement | 10/10/14 | $9,560.98 |
| Cosmoledo, LLC d/b/a Maison Kayser LLC | A&F Fire Protection Co., Inc. | Fire Sprinkler Inspection Contract | 9/27/19 | $0 |
| Cosmoledo, LLC d/b/a Maison Kayser LLC | Arista Air Conditioning Corp. | HVAC Maintenance Agreement | 5/6/16 | $50,088.39 |
| 2161 Broadway Bakery, LLC | Auto-Chlor System | Dishwashing Machine Agreement | 10/10/14 | $9,560.98 |
| Breadroll, LLC | City of Saints | Coffee Order Form | 5/7/18 | $7,280 |
| Cosmoledo, LLC | Nicholas Chevrieux | Severance Agreement | 3/31/20 | $69,230.75 |

| Debtor Entity | Counterparty | Agreement Description | Original Date | Estimated Cure Amounts as of 8/31/20 |
|---|---|---|---|---|
| 178 Bruckner Commissary, LLC | Gabrielli Truck Leasing LLC | Truck Leasing Agreement | 10/19/16 | $16,323.73 |
| Cosmoledo, LLC d/b/a Maison Kayser LLC | El Media Group | Master Music Service Agreement | 10/5/16 | $4,720.00 |
| Cosmoledo, LLC d/b/a Maison Kayser LLC | First Universal Cleaning Co. | Cleaning Services | 3/14/17 | $0 |
| Cosmoledo, LLC d/b/a Maison Kayser LLC | Konica Minolta | Copier/Printer Agreement | | $7,692.59 |
| Cosmoledo, LLC d/b/a Maison Kayser LLC | Megamax Voice & Data Inc. | Fire Alarm System Maintenance and Monitoring Agreement | | $1,306.50 |
| 178 Bruckner Commissary, LLC | Milea Leasing Corporation | Truck Leasing and Service Agreement | 11/11/14 | $10,360.56 |
| Cosmoledo, LLC | Jose Alcalay | Incentive Bonus Agreement | | $0 |
| Cosmoledo, LLC d/b/a Maison Kayser LLC | Konica Minolta Premier Finance | Copier/Printer Agreement #25569825 | 8/19/19 | $6,222.56 |
| 95 Broad Commissary, LLC | Konica Minolta Premier Finance | Copier/Printer Agreement #500-50033591 | 1/13/20 | $0 |
| Cosmoledo, LLC d/b/a Maison Kayser LLC | Konica Minolta Premier Finance | Copier/Printer Agreement #25477986 | 11/2/17 | $0 |
| Cosmoledo, LLC d/b/a Maison Kayser LLC | Modern Woodcrafts, LLC | Storage Fees | 3/1/19 | $7,976.25 |
| Cosmoledo, LLC d/b/a Maison Kayser LLC | Multivac | Premium Preventive Maintenance Service Agreement | 4/24/2019 | $4,222.35 |
| Cosmoledo, LLC d/b/a Maison Kayser LLC | Tennant Sales and Service Company | Tennant Sales and Service Company Gold Service Agreement | 1/30/17 | $2,289.54 |
| 210 Joralemon Bakery, LLC | Santec | Dishwashing Machine Rental Agreement | 12/1/11 | $475.20 |
| 8 West 40th Street Bakery, LLC | NCR Local Tri-State | NCR Purchase Agreement #23082 | 6/28/13 | $0 |
| 1800 Broadway Bakery, LLC | NCR Local Tri-State | NCR Purchase Agreement #23081 | 6/28/13 | $0 |

| Debtor Entity | Counterparty | Agreement Description | Original Date | Estimated Cure Amounts as of 8/31/20 |
|---|---|---|---|---|
| 921 Broadway Bakery, LLC | NCR Local Tri-State | NCR Purchase Agreement #23079 | 6/28/13 | $0 |
| 2161 Broadway Bakery, LLC | NCR Corporation – Radiant Systems, Inc. | NCR Purchase Agreement #31748 | 9/30/14 | $28,872.54 |
| 178 Bruckner Commissary, LLC | Michelle Kuo Corp (AIA Document A101 - 2020) | Standard Form of Agreement between Owner and Contractor | 4/27/20 | $124,293.50 |
| 178 Bruckner Commissary, LLC | Burnham Nationwide, Inc | Invoice #200563 - Kayser Bakery Commissary 178 Bruckner Blvd | 1/31/20 | $866.20 |
| 921 Broadway Bakery, LLC | Burnham Nationwide, Inc | Invoice #200564 - Kayser Bakery 921 Broadway | 1/31/20 | $1,952.70 |
| 1535 Third Avenue Bakery, LLC | Burnham Nationwide, Inc | Invoice #200568 - Kayser Bakery 1535 3rd Avenue | 1/31/20 | $4,598.60 |
| 1535 Third Avenue Bakery, LLC | Burnham Nationwide, Inc | Invoice #201297 - Kayser Bakery 1535 3rd Avenue | 3/11/20 | $400 |
| 178 Bruckner Commissary, LLC | Burnham Nationwide, Inc | Invoice #201383 – Kayser Bakery Commissary 178 Bruckner Blvd | 3/18/20 | $7,037 |
| Cosmoledo, LLC d/b/a Maison Kayser LLC | Burnham Nationwide, Inc | Invoice #202121 - Kayser Bakery 1535 3rd Avenue | 4/30/20 | $2,500 |
| 1535 Third Avenue Bakery LLC | Angelika Adams Design LLC | 178 Bruckner remaining items – Preliminary Punchlist | 8/12/20 | $2,500 |
| NYC 1294 Third Avenue Bakery, LLC | Radiant Systems (NCR) | Hosted Solutions Sales Orders | 7/10/12 | $0 |
| Cosmoledo, LLC | Bailey Glasser | Service Agreement | 4/2/20 | $2,880 |
| Cosmoledo, LLC d/b/a Maison Kayser LLC | Imperial Bag & Paper Co. LLC | Credit Application | 2/3/15 | $161,987,86 |
| 95 Broad Commissary, LLC | Fresherly LLC | Credit Application | 3/19/19 | $1,423.60 |
| Cosmoledo, LLC d/b/a Maison Kayser | First Universal Cleaning Co. | Engaged Annual Contract | 3/14/17 | $8,249.44 |

| Debtor Entity | Counterparty | Agreement Description | Original Date | Estimated Cure Amounts as of 8/31/20 |
|---|---|---|---|---|
| Cosmoledo, LLC d/b/a Maison Kayser LLC | T.W. Smith Corp. | Sales Agreement | 6/1/18 | $765.81 |
| Cosmoledo, LLC d/b/a Maison Kayser LLC | ServiceChannel | Master Services Agreement | 4/1/16 | $9,994.11 |
| Cosmoledo, LLC d/b/a Maison Kayser LLC | Baldor Specialty Foods, Inc | Credit Application | | $151,277.26 |
| Cosmoledo, LLC d/b/a Maison Kayser LLC | Dairyland USA Corp. | Credit Application | | $145,945.84 |
| Cosmoledo, LLC d/b/a Maison Kayser LLC | D`artagnan, LLC | Credit Application | | $23,336.94 |
| Cosmoledo, LLC d/b/a Maison Kayser LLC | Fodera Foods | Credit Application | | $50,255.75 |
| Cosmoledo, LLC d/b/a Maison Kayser LLC | JuliusSilvert, Inc. | Credit Application | | $34,521.65 |
| Cosmoledo, LLC d/b/a Maison Kayser LLC | M. Tucker a division of Singer NY, LLC | Credit Application | | $8,824.85 |
| 178 Bruckner Commissary, LLC | Paris Gourmet | Credit Application | | $89,673.73 |
| Cosmoledo, LLC d/b/a Maison Kayser LLC | ClearPath Solutions | Service Agreement | 2/2/20 | $0 |
| Cosmoledo, LLC d/b/a Maison Kayser LLC | Mazars USA LLP | Service Agreement | 4/6/20 | $61,317.99 |
| Cosmoledo, LLC | John Cahill | Consulting Agreement | 3/15/19 | |

**Appendix C**

**Form of Sale Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:                                                Chapter 11

COSMOLEDO, LLC, *et al.*[5]

                                                      Case No. 20-12117 (MEW)

                    Debtors.                          Jointly Administered

**NOTICE OF AUCTION SALE AND HEARING ON APPROVAL OF SALE OF
DEBTORS' ASSETS, FREE AND CLEAR OF ALL LIENS, CLAIMS AND
ENCUMBRANCES, SUBJECT TO HIGHER OR BETTER OFFERS PURSUANT
TO SECTION 363(b) OF THE BANKRUPTCY CODE**

**TO ALL CREDITORS OF THE DEBTOR AND OTHER NOTICE PARTIES:**

    **PLEASE TAKE NOTICE** that on September 10, 2020 (the "Petition Date"), Cosmoledo LLC, and its affiliated debtors and debtors in possession herein (the "Debtors"), filed voluntary petitions under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York.

    **PLEASE TAKE FURTHER NOTICE** that the Debtors have filed a motion (the "Motion")[6] seeking approval of a certain asset purchase agreement and related transaction documents (collectively, the "Sale Agreement") by and between the Debtors, as seller, and MK USA, LLC ("Purchaser"), pursuant to which, among other things, the Debtors propose to sell substantially all of its assets (the "Assets") to the Purchaser, free and clear of all liens, claims and encumbrances, and subject to higher or better offers (the "Sale").

    **PLEASE TAKE FURTHER NOTICE** that at a hearing held on September 30, 2020, the Bankruptcy Court entered an order approving the Bidding Procedures and the Bid Protections (the "Bidding Procedures Order").

    **PLEASE TAKE FURTHER NOTICE** that an Auction (as defined in the Bidding

---

[5]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Cosmoledo, LLC (6787); Breadroll, LLC, (3279); 688 Bronx Commissary, LLC (6515); 95 Broad Commissary, LLC (2335); 178 Bruckner Commissary, LLC (2581); 8 West Bakery, LLC (6421); NYC 1294 Third Ave Bakery, LLC (2001); 921 Broadway Bakery, LLC (2352); 1800 Broadway Bakery, LLC (8939); 1535 Third Avenue Bakery, LLC (1011); 2161 Broadway Bakery, LLC (2767); 210 Joralemon Bakery, LLC (4779); 1377 Sixth Avenue Bakery, LLC (9717); 400 Fifth Avenue Bakery, LLC (6378); 1400 Broadway Bakery, LLC (8529); 575 Lexington Avenue Bakery, LLC (9884); 685 Third Avenue Bakery, LLC (9613); 370 Lexington Avenue Bakery, LLC (0672); 787 Seventh Avenue Bakery, LLC (6846); 339 Seventh Avenue Bakery, LLC (1406); and 55 Hudson Yards Bakery, LLC (7583).

[6]    Capitalized terms not otherwise defined herein have the respective meanings ascribed to such terms in the Motion.

Procedures) will be held on **October 23, 2020 at 10:00 a.m.** (Eastern time) at the offices of Mintz & Gold LLP, proposed attorneys for the Debtors, 600 Third Ave., 25th Fl., New York, New York 10016, or by videoconference, to consider any higher and better offers in accordance with the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that a hearing will be held on **October 29, 2020, 2020 at 10:00 a.m.** (Eastern time) before the Honorable Michael E. Wiles United States Bankruptcy Judge, at the United States Bankruptcy Court, 1 Bowling Green, New York, New York 10004, to consider approval of the Sale Agreement or any higher and better offer(s) by the Successful Bidder(s) (the "Sale Hearing").

**PLEASE TAKE FURTHER NOTICE** that the Motion seeks approval of the assumption and assignment of certain executory contracts and unexpired leases to be identified by the Purchaser or other Successful Bidder pursuant to section 365 of the Bankruptcy Code and Bankruptcy Rule 6006. Appendix B to the Bidding Procedures Order sets forth a list of all of the Debtors' executory contracts and unexpired leases, together with a statement of the Cure Costs (if any) associated with each such contract and lease, calculated in accordance with the Debtors' books and records. In connection with the potential assumption and assignment of the executory contracts and unexpired leases, the Bankruptcy Court, pursuant to the Bidding Procedures Order, has directed that all non-debtor parties to any executory contract or unexpired lease electronically file with the Clerk of the Bankruptcy Court a cure claim, setting forth all claims and arrearages against the Debtors due under such contract or lease (the "Cure Claims"), and serve a copy of the Cure Claim upon (i) Mintz & Gold LLP, proposed attorneys for the Debtor, 600 Third Ave., 25th Fl., New York, New York 10016, Attn: Andrew Gottesman, Esq., gottesman@mintzandgold.com; (ii) Katten Muchin Rosenman LLP, 575 Madison Avenue New York, New York 10022, Attn: Jerry L. Hall, Esq., jerry.hall@katten.com, counsel to the Purchaser; and (iii) Hahn & Hessen LLP, 488 Madison Avenue, New York, NY 10022, Attn: Mark Indelicato, Esq. mindelicato@hahnhessen.com, counsel to the Official Committee of Unsecured Creditors, so as to be received on or before **October 27, 2020 at 12:00 p.m.** (Eastern time), provided, however, that any party that is required to file a Cure Claim, but fails to do so, shall be bound by the cure amount as set forth on Appendix B to the Bidding Procedures Order, and shall be forever barred from asserting any other Cure Claim against the Debtor, its estate, the Purchaser, or its designee, and/or any Successful Bidder arising under such executory contract or unexpired lease.

**PLEASE TAKE FURTHER NOTICE** that the following is a general explanation of the salient terms of the Sale Agreement.[7]

> Purchased Assets. The Sale Agreement contemplates the Debtors will sell, convey, assign and transfer to the Purchaser all of the Assets (other than the Excluded Assets) on the terms and subject to the conditions set forth in the Sale Agreement. The Assets include, among other things, (i) the equity of the entity in 688 Bronx Commissary, LLC, (ii) all furniture, fixtures and equipment, (iii) any and all acquired claims of the estate against go-forward vendors, parents,

---

[7]    The following is merely a summary of the Sale Agreement and is qualified in its entirety by the actual, express terms of the Sale Agreement. To the extent there is any discrepancy between this summary and the terms of the Sale Agreement, the terms of the Sale Agreement shall control.

affiliates and shareholders), (iv) Debtors' Intellectual Property, to the extent transferrable, and (v) the assumption of those of the Debtors' real property leases and executory contracts identified as of two days before the Bid Deadline.

Purchase Price. The purchase price for the Assets is (a) cash on the Closing Date in the amount of $3,000,000, plus (i) Cure Costs relating to any Assigned Contracts and Leases, (ii) other Assumed Liabilities under the Sale Agreement, and (iii) a credit bid of $5,400,000, subject to contest by the Creditors' Committee prior to the Sale Hearing (collectively, the "Purchase Price").

Assumed Liabilities. The Purchaser is not assuming any liabilities of the Debtors other than (a) liabilities arising from and after the Closing under any Assumed Contracts, and (b) such other liabilities as may be specifically identified in the Sale Agreement.

Assigned Contracts and Leases. The Sale Agreement contemplates that certain executory Contracts and Leases will be assumed and assigned to the Purchaser at Closing (the "Assumed Contracts"). The Purchaser shall be responsible for the payment of any Cure Claims associated with Assumed Contracts.

Excluded Assets. The Debtors are not selling to the Purchaser, and the Assets do not include, any asset specifically identified as being an Excluded Asset set forth in Section 2.2 of the Sale Agreement. Among other things, cash (including cash representing the PPP Loan), accounts receivable and certain claims and causes of action are not being sold.

Conditions to Closing. The Sale Agreement provides that the conditions to closing include, among other things, (a) entry of a final non-appealable order by the Bankruptcy Court authorizing the sale of the Assets to the Purchaser, pursuant to the terms of the Sale Agreement; (b) representations and warranties are true and correct; and (c) no breach of the Sale Agreement.

**PLEASE TAKE FURTHER NOTICE,** that any of the hearings scheduled by the Bankruptcy Court may be adjourned from time to time without prior notice to creditors or other parties in interest, other than by announcement in Bankruptcy Court of such adjournment on the date of the hearing.

**PLEASE TAKE FURTHER NOTICE,** that copies of the entire sale package, including the operative Bidding Procedures, the Bidding Procedures Order, the Motion, the Amended and Restated Sale Agreement and the Proposed Sale Order are available for inspection at the website of the Debtors proposed Claims and Noticing Agent and may be viewed at www.donlinrecano.com/maisonkayserusa Bankruptcy Court's website (www.nysb.uscourts.gov); or during regular business hours at the office of the Clerk of the United States Bankruptcy Court, 1 Bowling Green, New York, New York 10004; and you may request a copy by contacting Mintz

3

& Gold LLP, 600 Third Ave., 25th Fl., New York, New York 10016, Attn: CeCe Cole, Esq., cole@mintzandgold.com or telephone number (212) 696-4848.

**PLEASE TAKE FURTHER NOTICE,** that objections, if any, to the Sale (other than objections with respect to Cure Claims or the auction process and selection of the Successful Bidder), must be (i) filed electronically with the Clerk of the Bankruptcy Court (with a copy to chambers), (ii) state with specificity the basis for such objection, (iii) conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York and (iv)served upon served upon (a) Mintz & Gold LLP 600 Third Ave., 25th Fl., New York, New York 10016, Attn: Andrew Gottesman, Esq., gottesman@mintzandgold.com, proposed counsel for the Debtors; (b) Office of the United States Trustee for the Southern District of New York 201 Varick Street, Room 1006, New York, NY 10014 Attn: Brian Masumoto, Esq., Brian.Masumoto@usdoj.gov; (c) Willkie Farr and Gallagher, 787 Seventh Avenue New York, New York 10019, Attn: Paul V. Shalhoub, Esq., pshalhoub@willkie.com, counsel to the holder of Cosmoledo's equity interests; (d) Katten Muchin Rosenman LLP, 575 Madison Avenue New York, New York 10022, Attn: Jerry L. Hall, Esq., jerry.hall@katten.com, counsel to the Debtors' senior secured lender and Stalking Horse Bidder; (e) Hahn & Hessen LLP, 488 Madison Avenue, New York, NY 10022, Attn: Mark Indelicato, Esq., mindelicato@hahnhessen.com, proposed counsel to the Official Committee of Unsecured Creditors; and (f) all other parties who have requested notice under Bankruptcy Rule 2002 so as to be received no later than **October 21, 2020 at 5:00 p.m**. (Eastern Time).

Dated: October 1, 2020
     New York, New York

                                             MINTZ & GOLD LLP

                                             by: */s/ Andrew R. Gottesman*
                                           Andrew R. Gottesman
                                           Maria E. Garcia
                                           Gabriel Altman
                                           600 Third Avenue, 25th Floor
                                           New York, New York 10016
                                           Telephone (212) 696-4848
                                           Facsimile (212) 696-1231
                                           gottesman@mintzandgold.com
                                           garcia@mintzandgold.com
                                           altman@mintzandgold.com

                                           *Proposed Attorneys to the Debtors*

**Appendix D**

**Form of Cure Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

COSMOLEDO, LLC, *et al.*[8]

                    Debtors.

Chapter 11

Case No. 20-12117 (MEW)

(Jointly Administered)

**NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES AND ESTABLISHMENT OF CURE
CLAIMS BAR DATE FOR NON-DEBTOR COUNTERPARTIES TO SUCH
<u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>**

**TO ALL NON-DEBTOR COUNTERPARTIES TO
EXECUTORY CONTRACTS OR LEASES WITH THE DEBTORS:**

**PLEASE TAKE NOTICE**, that on September 10, 2020 (the "Petition Date"), Cosmoledo

LLC, and its affiliated debtors and debtors in possession herein (the "Debtors"), filed voluntary

petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the

United States Bankruptcy Court for the Southern District of New York.

**PLEASE TAKE FURTHER NOTICE**, that the Debtors have filed a motion (the

"Motion")[9] seeking approval of a certain asset purchase agreement and related transaction

documents (collectively, the "Sale Agreement") by and between the Debtors, as seller, and MK

USA, LLC ("Purchaser"), pursuant to which, among other things, the Debtors propose to sell

---

[8]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax
identification number, include: Cosmoledo, LLC (6787); Breadroll, LLC, (3279); 688 Bronx Commissary, LLC
(6515); 95 Broad Commissary, LLC (2335); 178 Bruckner Commissary, LLC (2581); 8 West Bakery, LLC (6421);
NYC 1294 Third Ave Bakery, LLC (2001); 921 Broadway Bakery, LLC (2352); 1800 Broadway Bakery, LLC (8939);
1535 Third Avenue Bakery, LLC (1011); 2161 Broadway Bakery, LLC (2767); 210 Joralemon Bakery, LLC (4779);
1377 Sixth Avenue Bakery, LLC (9717); 400 Fifth Avenue Bakery, LLC (6378); 1400 Broadway Bakery, LLC (8529);
575 Lexington Avenue Bakery, LLC (9884); 685 Third Avenue Bakery, LLC (9613); 370 Lexington Avenue Bakery,
LLC (0672); 787 Seventh Avenue Bakery, LLC (6846); 339 Seventh Avenue Bakery, LLC (1406); and 55 Hudson
Yards Bakery, LLC (7583).

[9]     Capitalized terms not otherwise defined herein have the respective meanings ascribed to such terms in the
Motion.

substantially all of its assets (the "Assets") to the Purchaser, free and clear of all liens, claims and encumbrances, and subject to higher or better offers (the "Sale"). [ECF No.:18]

**PLEASE TAKE FURTHER NOTICE**, that in connection with the Sale, the Debtors have filed a schedule of all of the Debtors' executory contracts and unexpired leases that are to be assumed and assigned to the Purchaser in accordance with the Sale Agreement, or such other party as may be the Successful Bidder at an Auction conducted in connection with the Sale (the "Cure Claims List") and that schedule states (among other things) the Cure Costs associated with each executory contract and unexpired lease on the Cure Claims List, calculated in accordance with the Debtors' books and records. The Cure Claims List is attached hereto as Appendix A.

**PLEASE TAKE FURTHER NOTICE**, that attached hereto as Appendix B is information the Debtors believe to be sufficient to provide adequate assurance of the future performance of any potential Successful Bidder under the contracts or leases listed on Appendix A, as required under Section 365(f) of the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE**, that the Debtors will file and serve notice of the Successful Bidder in any Auction within one (1) day following the conclusion of any Auction.

**PLEASE TAKE FURTHER NOTICE**, that the Bankruptcy Court has established **October 27, 2020 at 12:00 p.m.** (Eastern time) (the "Cure Claims Bar Date") as the date by which all non-debtor counterparties to the executory contracts and unexpired leases must electronically file with the Clerk of the Bankruptcy Court a cure claim, setting forth all claims and arrearages due and payable by the Debtor under such executory contract or unexpired lease or any objection to the form or manner of adequate assurance provided by the Successful Bidder (the "Cure Claims"), and serve a copy of the Cure Claims upon (i) Mintz & Gold LLP, proposed attorneys for the Debtors, 600 Third Ave., 25th Fl., New York, New York 10016, Attn: Andrew Gottesman, Esq.,

gottesman@mintzandgold.com; (ii) Katten Muchin Rosenman LLP, 575 Madison Avenue New York, New York 10022, Attn: Jerry L. Hall, Esq., jerry.hall@katten.com, counsel to the Debtors' senior secured lender and Stalking Horse Bidder; and (iii) Hahn & Hessen LLP, 488 Madison Avenue, New York, NY 10022, Attn: Mark Indelicato, Esq., mindelicato@hahnhessen.com, proposed counsel to the Official Committee of Unsecured Creditors.

PLEASE TAKE FURTHER NOTICE, that any party required to file a Cure Claim, that fails to do so, shall be bound by the cure amount as set forth on the Cure Claims List, and shall be forever barred from asserting any other Cure Claim against the Debtor, its estate, the Purchaser, or its designee, and/or any Successful Bidder arising under such executory contract.

PLEASE TAKE FURTHER NOTICE, that the Court has also set October 21, 2020 at 5:00 p.m. (Eastern time) as the deadline to object (other than with respect to Cure Claims, the auction process or the selection of the Successful Bidder) to the other relief sought at the Sale Hearing being held to consider final approval of the Sale to the Stalking Horse Bidder or other Successful Bidder at the Auction. Cure Claims may be combined with objections to other relief sought at the Sale Hearing.

Dated: October 1, 2020
     New York, New York

                              MINTZ & GOLD LLP

                              by: */s/ Andrew R. Gottesman*
                              Andrew R. Gottesman
                              Maria E. Garcia
                              Gabriel Altman
                              600 Third Avenue, 25th Floor
                              New York, New York 10016
                              Telephone (212) 696-4848
                              Facsimile (212) 696-1231
                              gottesman@mintzandgold.com
                              garcia@mintzandgold.com
                              altman@mintzandgold.com

*Proposed Attorneys for the Debtors*

**Appendix A**

**Cure Claims List**

**Appendix B**
**Adequate Assurance Information**