**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | : | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| **COSMOLEDO, LLC** *et al.* | : | Case No. 20-12117 (MEW) |
| | : | |
| Debtors. | : | |
| | : | |

**BENCH DECISION (1) APPROVING CLASS ACTION SETTLEMENT,
(2) APPROVING ATTORNEYS' FEES, (3) APPROVING A PORTION OF A
<u>FINANCIAL ADVISOR'S FEES, AND (3) DENYING A PROPOSED SERVICE FEE</u>**

APPEARANCES:

THOMPSON COBURN HAHN & HESSEN LLP
New York, New York
*Attorneys for William H. Henrich, the Liquidation Trustee*
    By: Mark Indelicato, Esq. (Telephonically)
        Aleksandra Abramova, Esq. (Telephonically)

LEE LITIGATION GROUP, PLLC
New York, New York
*Attorneys for S.D. Ryan Lieble and the Class Plaintiffs*
    By: Anne Seelig, Esq. (Telephonically)

DUNDON ADVISERS, LLC
White Plains, New York
    By: Matthew Dundon (Telephonically)

THE CITY OF NEW YORK
New York, New York
*Attorneys for the City of New York*
    By: Samantha Chu, Esq. (Telephonically)

OFFICE OF THE UNITED STATES TRUSTEE
New York, New York
*Attorneys for the United States Trustee*
    By: Brian S. Masumoto, Esq. (Telephonically)

1

**HON. MICHAEL E. WILES**
**UNITED STATES BANKRUPTCY JUDGE**

This decision is a revised version of rulings that the Court announced in open court on April 14, 2021.  It has been modified to correct inadvertent errors, to add or correct citations, and to clarify the Court's rulings.  This written bench decision constitutes the official decision of the Court.

I have before me a motion to approve a class action settlement and, in connection with that settlement, to approve various fees.  The class action was brought on behalf of former employees of the debtors in these cases.  The parties have proposed that an allowed general unsecured claim of $1.8 million be approved in favor of the class.  The likely distributions on the allowed claim would be between 20 and 25 percent, or between $360,000 and $450,000.  The original proposals that were made in connection with the settlement were that the following fees and costs would be paid from the actual recoveries before the remainder would be distributed to class members:

- One-third of the recoveries would be paid to the class action attorneys, the Lee Litigation Group;

- 15 percent of the first $500,000 of any recoveries, plus 7.5 percent of any excess recoveries over $500,000, would be paid to Dundon Advisers, LLC, a financial advisory firm;

- $75,000 would be paid to Advanced Litigation Strategies, LLC to administer the class action settlement; and

- $20,000 would be paid to the class representative, Mr. Lieble, as something that has variously been referred to in the papers or in the cited court decisions as either an "incentive fee," a "service award" or an "enhancement award."

As originally proposed, these various fees would have left somewhere between $91,000 and $137,500 for distribution to class members. The parties later amended the proposal to provide for an additional $25,000 administrative expense claim in favor of the class action settlement administrator. That amendment did not affect the class members' recoveries as the payout on the additional administrative claim came, instead, out of the estate.

At a hearing on March 9, 2022, I noted that no class member had objected to the settlement or to the proposed fee awards. I also stated that the overall settlement amount appeared reasonable from the perspective of the debtors' estates and from the perspective of the class. However, I noted that Rule 23 requires me to make findings as to the reasonableness of proposed fees. *See* Fed. R. Civ. P. 23, Advisory Committee Note of 2003 ("Whether or not there are formal objections, the court must determine whether a fee award is justified and, if so, set a reasonable fee.") I suggested that the proposed payments to the class action administrator were fine but that no supporting data had been offered in support of the other proposed fee awards. I expressed particular concern as to the proposed service fee for the class representative and the legal authority for such an award. The hearing on the motion then was adjourned to permit additional supporting information to be filed.

The additional submissions have been filed, and the Court has reviewed them carefully. The Court has also considered the arguments of counsel and is prepared to rule on each aspect of the pending motions.

## Settlement Approval

The motion before me requires, first, that I approve the settlement from the perspective of the estate. I have already indicated at the prior hearing that, from the perspective of the estate, this is a fair and reasonable resolution of this matter and complies with all of the relevant criteria for approval of a settlement under Rule 9019 of the Federal Rules of Bankruptcy Procedure and the various case law applying that rule.

Fed. R. Civ. P. 23(e)(2), which is incorporated by reference into Fed. R. Bankr. P. 7023 and which by agreement is applicable here by Fed. R. Bankr. P. 9014, also requires me to determine whether the settlement is fair, reasonable and adequate from the perspective of the class. I have considered the criteria listed in Rule 23(e), and from the perspective of the class the settlement is a reasonable compromise. The only issues that I have are as to what fees are appropriate to award for payment from the class recovery.

## Attorneys' Fees

The attorneys for the class have provided a supplemental declaration and time records estimating that counsel spent more than 480 attorney and paralegal hours in pursuit of the case and calculating that, at normal hourly rates, the attorneys' fees would have amounted to $270,752.50. Counsel has confirmed, however, that some of the estimates are not based on actual contemporaneous time records. The time charges for one associate (representing more than $87,000 of the total) were just estimates, based on the assumption that the associate likely billed twice as many hours as a partner did. I was told at the April 14 hearing that the relevant associate kept no contemporaneous time records at all.

I am not inclined to accept the estimate of the time spent by the relevant associate, which on the record appears to be little more than a rough guess. I note, however, that the actual hourly

4

attorneys' fees – even if I were to exclude all of the time of the associate who kept no contemporaneous records – would still be in excess of $190,000. Those charges would still be more than the amount that would actually be paid to counsel under the terms of the proposed settlement. More particularly, under the proposed fee arrangement the attorneys would likely receive somewhere between $120,000 and $150,000, depending on the payouts on general unsecured claims.

Counsel has argued that ordinarily it would be entitled to a fee increase above the so-called lodestar hourly fee calculations, but it does not appear that such an increase is actually being sought in this case and I do not need to address those standards or factors. The fee arrangement for which counsel has sought approval is a fee arrangement based on a percentage recovery that actually would produce a payout that is below what counsel's charges would be if computed at ordinary hourly rates. Under these circumstances, I will approve the attorneys' fees as they have been requested. The time spent (excluding the time of the associate who kept no records) was reasonable, the hourly rates were reasonable, and the actual fees that will be paid are less than what the hourly rates would have been.

## **Fees of Dundon Advisers**

Dundon Advisers has indicated that it was retained after the filing of the bankruptcy case, which apparently was after a tentative class action settlement had been reached but before a settlement could be presented to the District Court for approval. Apparently, Dundon was retained because of the bankruptcy filing itself. The supplemental declaration submitted on behalf of Dundon Advisers argues that, among other things, Dundon provided services to the class representative in connection with the class representative's service as a member of the statutory Official Committee of Unsecured Creditors. Dundon argues that its services helped to

bring about greater recoveries for unsecured creditors in general and for class members in particular.

The parties have cited no particular provision of Rule 23 that permits the retention of financial advisors or the payments of fees to financial advisors. However, no objections were filed on that basis, and the Court will presume for purposes of this ruling that Dundon's services could be analogized to the services of experts or consultants who are reasonably retained in connection with a pending case. The question remains as to whether the services were warranted and beneficial and whether the proposed fees are reasonable in amount.

Under the terms of the proposed settlement, Dundon would receive a payment of between $54,000 and $67,500 for its services. Dundon Advisers did not keep contemporaneous time records. It estimates that its personnel spent 90 hours working on this matter and that, at normal hourly rates, the charges would have amounted to $62,800. Dundon says that it normally would have contracted for a premium of 50 percent, which would have raised the fee to $94,200.

By its own account, as reported during the hearing on April 14, at least half of Dundon's work was in connection with Mr. Lieble's membership on the unsecured creditor's committee. Much of what has been submitted and argued in connection with Dundon's fee application is similar to what a Court sometimes hears in support of a motion for the allowance of a "substantial contribution" claim by a creditor under section 503(b)(3)(D) of the Bankruptcy Code, or by such a creditor's attorney or accountant under section 503(b)(4). *See* 11 U.S.C. § 503(b)(3)(D), (b)(4). However, no "substantial contribution" application was made in the underlying bankruptcy case, and I believe, under the terms of the proposed plan and confirmation order, it is far too late for such an application to be made. Furthermore, a "substantial contribution" application would give rise to an administrative expense that would be borne by

the estate. Instead, the theory is that the class members here would pay for the entirety of the benefit that Dundon allegedly secured not just for them, but for the benefit of all general unsecured creditors.

I am not at all convinced that this is appropriate. I received no application for the retention of Dundon Advisers as financial advisors to the Creditors' Committee. The Creditors' Committee instead retained, and was ably advised by, a different financial advisory firm (the Getzler Henrich firm). Dundon cannot properly seek compensation for professional services to the Committee without compliance with the professional retention and fee requirements of sections 327 through 330 of the Bankruptcy Code. And as noted above, it cannot properly seek compensation for alleged "substantial contributions" without making a proper and timely motion under section 503(b).

In addition, there is an insufficient showing that Dundon's work in connection with the Creditors' Committee's general activities was necessary or beneficial, either to creditors general or to the class. As noted, the Committee was already represented by a capable financial advisory firm. Dundon has offered only conclusory assertions that Dundon's work was somehow important and somehow had the effect of improving the recoveries of creditors generally and of the class in particular. I have no details to back up those contentions. Similarly, I have little or no support for the proposition that the class (or Mr. Lieble) required a financial advisor of its own, or as to what benefits were derived from having one, or as to any ways in which the interests of the class required financial advice different from what the Getzler Henrich firm provided to the Creditors' Committee as a whole. I have only conclusory assertions that without Dundon's skill and experience, and its willingness to work on a contingency fee basis, the claims of the class members somehow might not have been permitted at all or might have been

7

disallowed.  No specifics have been offered in support of that somewhat self-congratulatory statement.

The only statement in the supporting declaration that would support a payment of any fees for Dundon Advisers is the contention that at some point, after work on behalf of the Creditors' Committee was finished, Dundon helped to negotiate the final class action settlement itself.  I do not know what percentage of Dundon's total time was devoted to that project because no time records were kept.  It is not particularly clear to me that this work required the assistance of a financial advisor.  However, even if I assumed that the settlement negotiation required one-fifth of the total estimated time (which seems to me to be a very generous assumption in light of how much time it ought to have taken and the fact that a tentative settlement had been reached before the bankruptcy case was even filed), that would leave fees of $12,560 at normal hourly rates, or $18,840 at the proposed premium rates.

I will not approve a proposed percentage fee award under these circumstances.  I do not think it is reasonable given the nature of what Dundon was hired to do and what it actually did.  I will give Dundon Advisers some benefit of the doubt, however, and I will approve a total fee to Dundon Advisers in the flat amount of $20,000.

### The Proposed "Incentive Fee"

As to the proposed service award or incentive fee award for Mr. Lieble: the parties have proposed to reduce it to $10,000, or alternatively, to replace the $20,000 payment with a $20,000 allowed claim.  If an incentive award were to be granted in the form of an allowed claim in the amount of $20,000, the payout would be between $4,000 and $5,000.  Obviously, if Mr. Lieble were simply awarded a $10,000 fee off the top, then he would receive a $10,000 payment.

I remain unconvinced of the propriety of the proposed incentive fee or service award. It is clear that many courts have approved them. However, it also appears that most of the courts who have approved such awards have done so without objection and without making any apparent ruling at all as to the authority to approve such payments. *See Greenberg v. Procter & Gamble Co. (In re Dry Max Pampers Litig.)*, 724 F.3d 713, 722 (6th Cir. 2013) ("[T]o the extent that incentive awards are common, they are like dandelions on an unmowed lawn – present more by inattention than by design.") Indeed, some of the reported "decisions" on this subject actually appear to be just copies of orders that were proposed by class counsel and that were entered without modification.

There seems to me to be something fundamentally misguided in the suggestions, in many of the cited authorities, that incentive fees should be approved because class action representatives deserve special additional compensation for the litigation risks they have undertaken or for the time they have spent. Rule 23 says nothing about granting "incentive awards" on that basis. The effect of a "service award" is to provide a litigant with a recovery that is not a damage recovery or a reimbursement for out-of-pocket costs, and that appears to have no root in any particular statute or court rule. If the underlying substantive law and the class action rules themselves do not provide for such a form of recovery, then I am at a loss to understand the authority under which judges have undertaken to provide it.

The due process underpinnings of the class action rule are based on the assumption that a class representative's claim is typical of the claims of other class members, and that an individual class representative has sufficient incentive in the pursuit of his or her own claim to provide adequate representation of other people who have similar claims. From that point of view, class representatives should not need or get additional incentives or compensation. Or to put it another

9

way: if a plaintiff's own claims are not good enough incentives for a plaintiff to take on the burdens of litigation, and if the plaintiff needs additional rewards and additional recoveries in order to do so, then perhaps that plaintiff is not a good choice to be a class representative in the first place.

I therefore have extremely strong doubts about the proprieties of these awards in general. If I were writing on a blank slate, I would rule that incentive fees or service awards to class representatives are not appropriate and are not permitted under Rule 23. However, I am not writing on a blank slate. There are many decisions that have approved such awards, and there is significant authority in this district for their approval and at least one decision by the Circuit Court of Appeals that has affirmed a District Court's discretion to award an incentive fee. *See Melito v. Experian Mktg. Solutions, Inc.*, 923 F.3d 85, 96 (2d. Cir. 2019). In any event, it is not necessary in this case to decide whether such awards are ever appropriate in the abstract. I have considered the cases cited by class counsel and the factors they have cited, and I have concluded that in this particular case, an incentive award would not be appropriate.

Class counsel has argued that Mr. Lieble faced risks of retaliation by bringing the class action lawsuit. However, counsel also acknowledges that Mr. Lieble was not even employed by the Debtors at the time the suit was filed. That does not eliminate the possibility of retaliation, I suppose, but it makes the risks very speculative, and I have only the general arguments of counsel (and no actual evidence) to support the suggestion that Mr. Lieble undertook any real risk in this case.

I am also told that Mr. Lieble expended significant time and effort on behalf of the class. However, I have no actual accounting of that time and no evidence on the subject; I have just a conclusory assertion by counsel, in its argument, that the time spent was significant.

Furthermore, no court (to my knowledge) has held that a class representative is automatically entitled to compensation for having elected to serve in that capacity. In this case, I do not see that any unusual risk was taken or that any unusual expenditure of time occurred that would call for compensation.

More importantly, I am very concerned about the huge disparity in recoveries that would occur if a service award were to be approved in this case. At the very core of Rule 23 is the presumption that a class representative's interests are identical to and fully aligned with the interests of absent class members. Rule 23 also presumes that all class members will receive proportionate recoveries with respect to their claims; indeed, this is one of the factors that a court is required to consider in deciding whether a settlement should be approved. Fed. R. Civ. P. 23(e)(2)(D). Incentive payments or "enhancement" awards, if they are not carefully policed, can work contrary to these fundamental principles. They can have the effect of giving different recoveries and, therefore, different incentives and interests to class representatives, particularly when the incentive fees are part of a settlement that the class representative and the class representative's chosen counsel have negotiated.

Incentive awards in the worst cases can act as invitations for class representatives to approve deals that ensure the class representatives' own recoveries while possibly leaving others behind. *See, e.g., Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 720 (E.D.N.Y. 1989) ("If class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard.") That potential incentive is the opposite of the incentive that a class representative is supposed to have in litigating a case or in negotiating a settlement. The temptation can be especially strong in a case where recoveries are

11

20-12117-mew    Doc 516    Filed 04/27/22    Entered 04/27/22 13:55:45    Main Document
Pg 12 of 13

likely to be very low, and where the proposed incentive fee is likely to produce a recovery by the class representative that will be disproportionate when compared to what other members will receive.

It is no answer to say that a court can deny a service award if the court is able to pinpoint an actual problem that has occurred or is able to point to an actual breach of duty by a class representative.  A class action representative is a fiduciary.  It is not proper that a fiduciary have any interest that potentially conflicts with the interests of the persons for whom the fiduciary acts.  It is, therefore, not appropriate that a fiduciary have compensation rights, or that a fiduciary negotiates compensation rights for himself or herself as part of a settlement, that provide the fiduciary with a markedly better recovery than will be achieved by the persons whose interests the fiduciary represents.  If a settlement includes an incentive award that produces a recovery for a class representative that is disproportionate when compared to the recoveries of class members, then in my mind the proposed incentive fee itself inherently gives the fiduciary a conflicting and different interest that should not have existed, that is not consistent with the role that the fiduciary occupies, and that should be denied under Rule 23.

I believe that maintaining the integrity of the class action process and the integrity of the class action settlement process requires that courts act vigilantly to ensure, at a minimum, that incentive fees do not result in skewed recoveries for class representatives, even if incentive awards or service awards otherwise are to be permitted.  The compensation structures in class actions should give comfort to the class members that a class representative's own decisions are based just on the litigation outcomes that everybody will share in equitably.

In this case, I asked the class counsel to submit a statement as to what the class representative's litigation recovery would be in the absence of the proposed service award.  The

statement submitted by counsel indicates that under the settlement as it has been proposed the class representative, Mr. Lieble, would receive a distribution of approximately $17.72.  Other class members who are in positions equivalent to that of Mr. Lieble would receive similar small recoveries.  Mr. Lieble's proposed service award, under any of its versions, would provide him with a recovery that is more than 2,000 times greater than the recoveries of other class members.

I do not believe that any special circumstances justify a service award in this case, and they particularly do not justify an award that would provide such a drastically disproportionate recovery by Mr. Lieble.  I therefore will not approve any proposed incentive fee or service award for Mr. Lieble.

A separate order will be entered to reflect these rulings

Dated: New York, New York
April 27, 2022

/s/ **Michael E. Wiles**
UNITED STATES BANKRUPTCY JUDGE